UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

MELISSA ROSARIO,

                                                       Case No. 21 Civ. 6493

                        Plaintiff,

                    -against-                              **COMPLAINT**

The VILLAGE OF PORT CHESTER POLICE        **JURY TRIAL DEMANDED**
DEPARTMENT; LUIS A. MARINO, Mayor of the
Village of Port Chester in his official capacity; and the
VILLAGE OF PORT CHESTER,

                        Defendants.

-------------------------------------------------------------------- X

      Plaintiff Melissa Rosario, by her attorneys, Advocates for Justice, Chartered Attorneys, for her Complaint against Defendants, Port Chester Police Department ("PCPD"), Mayor Luis A. Marino, and the Village of Port Chester, alleges as follows:

## PRELIMINARY STATEMENT

      1.     This is an employment discrimination case brought pursuant to 42 U.S.C. § 2000e ("Title VII of the Civil Rights Act of 1964") and 42 U.S.C. § 1981, as well as New York State Human Rights Law ("NYSHRL"). Plaintiff was discriminated against, subjected to a hostile work environment, and retaliated against based on her gender. Plaintiff has been denied promotions over the past 19 years, despite her qualifications and experience, due to her gender. Plaintiff has complained to her supervisors and filed a complaint with the Equal Employment Opportunity Commission (EEOC) but has experienced no relief. Instead, Plaintiff has experienced retaliation from Village of Port Chester service members and an elected official.

## JURISDICTION & VENUE

2. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332, and 42 U.S.C. § 2000(e), as well as 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because at least one the defendants does business in this District, and because some of the causes of action arose and the acts and omissions complained of occurred in this District.

## PARTIES

4. Plaintiff Melissa Rosario is a resident of Westchester County, New York, and was at all relevant times employed by Defendant PCPD.

5. Defendant PCPD is the municipal police department of the Village of Port Chester located in Westchester County, New York, and was at all relevant times the Plaintiff's employer.

6. Defendant Luis A. Marino is a resident of Westchester County and the elected Mayor of Port Chester, New York, and was at all relevant times acting in his official capacity and had the ability to affect the terms and conditions of Plaintiff's employment, and/or participated in the discriminatory treatment faced by Plaintiff.

7. Defendant Village of Port Chester is a municipal corporation chartered under the laws of the State of New York in 1868 and tasked with the municipal governance of the Village of Portchester.

## PROCEDURAL HISTORY

8. On or around March 22, 2021, Plaintiff submitted an initial charge of gender discrimination and retaliation with the EEOC. On May 3, 2021 the EEOC issued a right to sue letter to Plaintiff. A copy of the right to sue letter is attached herein as Exhibit A.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

9. Plaintiff, a female, has worked for the PCPD since in or about 2002.

10. Plaintiff has often been the only female officer at PCPD.

11. As a result, Plaintiff was subjected to discrimination, harassment, and a hostile work environment.

12. For example, for most of Plaintiff's career and continuing through today, official correspondence, including emails directed at Plaintiff and her coworkers, is addressed to "Gentlemen."

13. As other examples, while serving as an officer, Plaintiff's captain has assigned her numerous menial tasks outside her job description, such as picking up dry cleaning, running errands to the post office, and personal hand mail delivery, that similarly situated male officers were not assigned. The Department also regularly gave Plaintiff low-level responsibilities and office clerical work that were normally assigned to more junior officers and that carried with them little opportunity for advancement such as working with youth, community outreach.

14. Even though Plaintiff is regularly assigned the above-referenced non-enforcement duties, she has been consistently derided by her male counterparts and superior officers for not issuing "enough" tickets and summonses.

15. Plaintiff is regularly subjected to disparaging comments in the workplace on account of her gender; for example, her male colleagues have stated she "does not work hard enough," and she gets "special treatment" because men "feel bad" for her because she is a single mother. In 2016, Plaintiff's male co-worker wrote "useless" on her paycheck envelope, which she received personally on payday. Plaintiff's male colleagues were not subjected to similar treatment.

16. In October 2019, a male colleague humiliated and threatened Plaintiff because she was a woman. The male colleague made his comments in front of Plaintiff's colleagues and supervisors, getting physically very close to Plaintiff and screaming at her, "what are you going to do, you have something to say then say it," and "you think you have friends here but you don't."

17. Plaintiff complained to Chief Conway verbally and through email, informing him about the male colleague's actions. Chief Conway took no steps to discipline the offending police officer.

18. After further complaint on the part of Plaintiff, the Village of Port Chester and PCPD claimed to be investigating the incident. To date no findings have been issued and no disciplinary action has been taken against the offending officer.

19. As early as 2015, Plaintiff notified Police Chief Conway that she wanted to be placed in training and on assignments that carried greater promotion opportunities and that she ultimately wanted to be promoted to detective.

20. Following this discussion Plaintiff aggressively sought such assignments and training.

21. Although Plaintiff possessed qualifications commensurate with other similarly situated male colleagues, Plaintiff was denied commensurate opportunities, and was denied advancement. In 2016, 2017, 2018, 2019, and 2020, Plaintiff watched more junior male colleagues, including, among others, Chris Krzeminski, Thomas Munnelly, Angel Sanchez, David Valdovinos, Richard Grall, Matthew Chalmers, and Arthur Dusenbur, achieve detective status while Plaintiff's career remained stagnant.

22. Each time the Department deprived Plaintiff of the opportunity for advancement, her supervisors assured her that she possessed stellar qualifications, but she was not promoted due

to various external concerns. Plaintiff's supervisors told Plaintiff it was not because of her performance or ability.

23. In or about February 2019, Plaintiff again asked to be appointed to an open detective position. And again, Plaintiff watched the Department promote a male officer to the role of detective over her.

24. In or about April 2019, PCPD arranged for Plaintiff to attend detective training. Chief Conway told Plaintiff she was the "only police officer ever to attend such training as a silver shield, police officer," i.e., such training is normally reserved for officers who have already been promoted to the rank of Detective. This was an implicit admission by PCPD that Plaintiff was qualified to be a detective; nevertheless, after completing the training, Plaintiff did not receive a promotion to Detective.

25. Besides Plaintiff, no other PCPD officer has been denied a detective position after attending detective training.

26. Also in or about 2019, a federal agent who Plaintiff had met in training recommended Plaintiff to join the Drug Enforcement Agency ("DEA") Task Force, a common career advancement step for PCPD officers.

27. Chief Conway offered Plaintiff the assignment to the DEA Task Force.

28. Between in or about December 2019 and February 2020, Plaintiff attended DEA training and processing in New York City to prepare for the DEA position.

29. The PCPD, however, withdrew its approval for Plaintiff to join the DEA Task Force in or around the time that it commenced its investigation into the complaint of harassment referenced above in paragraph 16.

30. On or about May 22, 2020, to justify their withdrawal of Plaintiff's promotion, the PCPD told Plaintiff she would not be promoted because PCPD needed "manpower." PCPD stated it needed more officers. Despite the need for more "manpower," male officers continued to be promoted while Plaintiff continued to work in her same position.

## RETALIATION

31. On or about April 22, 2021, after enduring discrimination due to her gender and retaliation for filing a complaint with her supervisor, Plaintiff filed a charge of discrimination against her employer with the U.S. Equal Employment Opportunity Commission ("EEOC").

32. The EEOC issued a right to sue letter on May 3, 2021, and the VPC was notified of the charge. See Exhibit A.

33. Since the filing, Plaintiff has endured multiple acts of retaliation.

   a. On May 18, 2021, Plaintiff's car was parked in the police driveway. Someone vandalized the car by writing the word "RAT" in large letters and drawing a caricature across the back of the vehicle.

   b. On May 30, 2021, Plaintiff learned that the Port Chester mayor, Luis A. Marino, told other law enforcement officers that Plaintiff was no longer a candidate for the detective bureau because of the "shit [she was] pulling … with the lawsuit and everything."

34. The illegal pattern of discriminatory and retaliatory actions has caused the plaintiff emotional distress, causing her to seek medical attention.

## AND AS FOR A FIRST CAUSE OF ACTION

35. The allegations contained in the paragraphs above are incorporated by reference as though fully set forth herein.

36. Plaintiff is an employee within the meaning of Title VII, 42 U.S.C. § 2000e(f).

37. The PCPD is an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b).

38. Defendant Marino was acting in his official capacity when he discriminated and retaliated against Plaintiff.

39. By the actions described above, Defendants have discriminated against, retaliated against, and subjected Plaintiff to a hostile work environment on the basis of her gender.

40. Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiffs' protected rights.

41. As a result of Defendants' discrimination, Plaintiff has suffered injury to her career, emotional distress, economic damage and other injury.

42. As a result of Defendants' unlawful discrimination, Plaintiff has been damaged and is entitled to injunctive relief, economic damages, compensatory damages, costs, and attorneys' fees and interest.

43. As a result of PCPD's discriminatory and retaliatory actions, Plaintiff has been injured, suffered, and will continue to suffer wrongful deprivation of career opportunities, professional injury, and emotional distress.

### AND AS FOR A SECOND CAUSE OF ACTION

44. The allegations contained in the paragraphs above are incorporated by reference as though fully set forth herein.

45. By the actions described above, the Village of Port Chester, PCPD, and Mayor Luis A. Marino retaliated against Plaintiff for engaging in a protected activity.

### AND AS FOR A THIRD
### CAUSE OF ACTION

46. The allegations contained in the paragraphs above are incorporated by reference as though fully set forth herein.

47. Defendants Village of Port Chester and PCPD were Plaintiff's employer within the meaning of the New York State Human Rights Law ("NYSHRL") and have discriminated against, harassed, and subjected Plaintiff to a hostile work environment on the basis of her gender in violation of New York Executive Law § 296.

48. Defendant Marino is a person as defined by New York State Executive Law ¶ 292.

49. Defendant PCPD and Defendant Village of Port Chester engaged in discrimination against Plaintiffs and disparate treatment of the Plaintiffs based upon the sex/gender, race/ethnicity and age as set forth herein.

50. Defendant Marino aided and abetted PCPD and Defendant Village of Port Chester in the discrimination and unequal treatment of Plaintiffs.

51. As a result of Defendants' discrimination against Plaintiff, Plaintiff has suffered economic and emotional distress injuries.

52. By reason of the foregoing, Plaintiff has been damaged and are entitled to injunctive relief, economic damages, compensatory damages, costs, and attorneys' fees and interest.

### JURY TRIAL DEMANDED

53. Plaintiff requests a trial by jury on all claims asserted herein.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays that judgment be entered:

1. Ordering Defendants to make Plaintiff whole by promoting Plaintiff to Detective;

2. Awarding Plaintiff compensatory damages in the sum of $200,000;

3. Awarding emotional distress damages to Plaintiff in the sum of $300,000;

4. Awarding litigation costs and expenses, including, but not limited to reasonable attorneys' fees to Plaintiff.

5. Granting Plaintiff such other and further relief as the Court deems proper and just.

Dated: New York, New York
July 30 2021

ADVOCATES FOR JUSTICE
CHARTERED ATTORNEYS
Attorneys for Plaintiffs

By: /s/ *Laine Alida Armstrong*
    Laine Alida Armstrong
225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400
laine@advocatesny.com